IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, | : |
| Plaintiff, | : |
| | : Civil Action No. |
| v. | : |
| TRENT LEYDA, KAY CAMPIONE, and JAMES BEINDORF, | : |
| Defendants. | : |

## COMPLAINT

Plaintiff Morgan Stanley Smith Barney LLC ("Morgan Stanley"), by its undersigned attorneys, hereby brings the following Complaint for temporary and preliminary injunctive relief against Defendants Trent Leyda ("Leyda"), Kay Campione ("Campione"), and James Beindorf ("Beindorf") (unless otherwise noted, collectively referred to herein as "Defendants") and alleges as follows:

**I.      INTRODUCTION**

1.      Defendants were former Financial Advisors in Morgan Stanley's Vero Beach, Florida office until their resignations on October 5, 2023. Along with three support personnel who also resigned from Morgan Stanley, Defendants started their own firm, Spire Point Private Client ("Spire Point"), a direct competitor of Morgan Stanley and also located in Vero Beach, Florida. This dispute arises from Defendants' ongoing solicitation of Morgan Stanley clients in direct violation of their contractual obligations, as well as their apparent confiscation and misuse of highly confidential client and other proprietary Morgan Stanley information to carry out their improper solicitations. Defendants had access to hundreds of Morgan Stanley clients,

1

with over $1 billion in assets under management, and generating nearly $5 million in annual revenues for Morgan Stanley.

2. As detailed below, Morgan Stanley has attempted on numerous occasions to obtain assurances that Defendants will cease soliciting clients and return its confidential client information but has been *repeatedly ignored*. Instead, numerous clients have informed Morgan Stanley that Defendants have contacted them about doing business at their new firm and that prior to their departure from Morgan Stanley, Defendants had convinced clients that Defendant Leyda was the Manager of the Morgan Stanley Vero Beach office. Defendant Leyda was employed as a Financial Advisor for Morgan Stanley and never had any managerial responsibilities. Upon information and belief, Defendants made these false and/or misleading statements to Morgan Stanley clients concerning Defendant Leyda's status at Morgan Stanley so clients would have a false sense of security moving their accounts from Morgan Stanley to Defendants' new firm, which is now managed by Defendant Leyda.

3. Morgan Stanley also has concerns that Defendants retained confidential client information, including, but not limited to, client contact information and other confidential client information. Indeed, as set forth below, Defendants have refused to sign sworn declarations that they retained no such information upon their departures and that they intend to comply fully with their non-solicitation agreements.

4. Even though the merits of this dispute are subject to mandatory arbitration before the Financial Industry Regulatory Authority ("FINRA"), under Rule 13804 of the FINRA Code of Arbitration Procedure, Morgan Stanley has the express right to seek temporary injunctive relief in this Court. In accordance with Rule 13804(a)(2) of the FINRA Code, simultaneous

2

with the filing of its motion for interim injunctive relief in this Court, Morgan Stanley filed its claim for permanent injunctive relief with FINRA.

5. It is vital to note that Defendants *expressly agreed to the issuance of injunctive relief* in their <u>Financial Advisor Employment Agreements</u> (the "Agreement") in order to enforce their non-solicitation and confidentiality provisions. (*See* Exhibits A-C at paragraphs 4/5).

6. If this Court grants a TRO and/or preliminary injunction, under FINRA Rule 13804, a FINRA panel of arbitrators will convene a hearing on permanent injunctive relief within only 15 days. In contrast, absent such relief, a hearing before FINRA will not occur for 9-12 months and Defendants will be free to violate their obligations with impunity, inflict further irreparable harm on Morgan Stanley, and violate the privacy rights of clients.

**II.     PARTIES**

7. Morgan Stanley is a limited liability company incorporated in Delaware with its principal place of business in the State of New York. Morgan Stanley's sole member is Morgan Stanley Smith Barney Holdings LLC, also incorporated in Delaware with its principal place of business in the State of New York. Morgan Stanley Smith Barney Holdings LLC, in turn, has as members various entities incorporated in Delaware, New York and/or other foreign jurisdictions. No member of Morgan Stanley Smith Barney Holdings LLC is a citizen of the state of Florida; namely, no such member is either incorporated in Florida or has its principal place of business in Florida.

8. Defendants reside in, and are citizens of, the State of Florida. All were Financial Advisors in Morgan Stanley's Vero Beach, Florida office.

### III. JURISDICTION AND VENUE

9. Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, against each Defendant. Venue is proper in this district because it is the district in which the conduct complained of occurred.

### IV. FACTS COMMON TO ALL COUNTS

10. Paragraph 2 of Defendants' Agreements provides that "you will not remove Trade Secrets or other Company Records from the premises except in the ordinary course of conducting business for, and subject to approval by, Morgan Stanley. You also agree that you will not use Trade Secrets or other Company Records for any purpose other than the purpose of conducting the business of Morgan Stanley." (Exhibits A-C).

11. Paragraphs 3/4 contains Defendants' promise not to "solicit or attempt to solicit, directly or indirectly, any of Morgan Stanley's customers who were serviced by you, or whose names became known to you, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds, or any other line of business in which Morgan Stanley or any of its affiliates is engaged." (Exhibits A-C).

12. In paragraphs 4/5, Defendants expressly agreed to a TRO and/or preliminary injunction to enforce their confidentiality and non-solicitation obligations pending FINRA arbitration. (Exhibits A-C).

13. Moreover, in connection with the retirement of Morgan Stanley financial advisor Jeffrey Pearson, Defendants Leyda and Campione signed the <u>Former Advisor Program Active Advisor Agreement</u> (the "FAP Agreement") (Exhibits D and E hereto), wherein they agreed

4

that, "following the termination of your employment for any reason, for a period of one year or the remainder of the Payment Period, whichever is longer, you will not solicit or attempt to solicit, directly or indirectly, any of the Clients who were served by you or any other Active Advisor in connection with this FAP Arrangement, or whose names became known to you in connection with this FAP Arrangement, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley . . . ." The terms of this particular non-solicitation provision expire on March 31, 2028.

14. Defendants Leyda and Campione also "acknowledge[d] that the Former Advisor Client Accounts and the above-described information and documents are highly confidential, proprietary, and the property of Morgan Stanley, and the misuse or misappropriation of such information would be of immeasurable loss and detriment to Morgan Stanley." (Exhibits D and E).

15. In their FAP Agreement, Defendants Leyda and Campione also agreed that "[i]n the event you breach any of your obligations set forth in the Non-Solicitation of Clients and Confidentiality Obligations provisions above, you agree that Morgan Stanley will be entitled to injunctive relief specified in this Agreement. You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration . . . ." (Exhibits D and E).

16. Defendants' commitment to maintain the confidentiality of Morgan Stanley's client information is also set forth other agreements. For instance, Defendants agreed to abide by Morgan Stanley's <u>Code of Conduct</u>. The <u>Code of Conduct</u> defines "confidential

5

information" as information "that is not generally known to the public", including the "identity of our clients. . . ." (*See* Exhibit F).

17. The Code of Conduct further states, "You must protect all confidential information, regardless of its form or format" and "only access confidential information that you need and are authorized to see.. . . " (*Id*.).

18. The Code of Conduct also makes clear that "[t]his Code forms part of the terms and conditions of your employment and governs your activities at Morgan Stanley. It also covers certain obligations that continue if you leave Morgan Stanley. You are responsible for following this Code and all policies and procedures that apply to you." (*Id.*).

19. Defendants resigned *en masse* on Friday, October 5, 2023 to form Spire Point.

20. On October 6, 2023, counsel for Morgan Stanley sent a letter to counsel for the Defendants demanding compliance with the Defendants' non-solicitation obligations as well as the return of all client information retained by the Defendants upon their departures, including, but not limited to, client contact information. (Exhibit G). On October 7, 2023, counsel for the Defendants wrote an email to Morgan Stanley counsel, as follows: "we have no problem confirming they have nothing. I'll confirm more formally after the weekend but wanted to get you this preliminary response." (Exhibit H). **No "formal" response came.**

21. Unfortunately, Defendants' unlawful conduct continued. In a letter dated October 11, 2023 to Defendants' counsel (*see* Exhibit I), Morgan Stanley noted that Morgan Stanley clients are being told that Trent Leyda was the "manager" of Morgan Stanley's Vero Beach office and/or that he "ran" the office. One client reported to Morgan Stanley, "I'm sorry, I am just shocked, I've been with him [Leyda] 14 years and he has always told me he ran this office. I just can't believe you are saying this to me."  When another client recently learned that

6

Vincent Celano has been the Branch Manager of the Vero Beach office for the past 10 years, the client stated, "You got to be kidding me."

22.     Morgan Stanley also pointed out in its October 11 correspondence that clients are further being told that "no one is left" in Vero Beach.  These statements are all false. Additionally, one or more of the Defendants have even suggested to clients that their new Financial Advisor at Morgan Stanley would be "flying in" from New York, further feeding into the false narrative that "no one is left" in the Vero Beach office.  No one has flown in from New York, there remain 12 Financial Advisors located in the Morgan Stanley Vero Beach office, which has been managed by Vincent Celano, not Defendant Leyda, for the past 10 years.

23.     In its October 11 correspondence, Morgan Stanley also outlined concerns regarding the possibility that Defendants retained confidential client information, including client contact information.  For example, after inspection of the departed employees' offices/work area, Morgan Stanley could locate hardly any client files or documents. Morgan Stanley also noted that the departed employees' printing activity in the days leading up to their resignations was very suspicious, and Morgan Stanley's investigation was continuing in this regard.  In fact, after Morgan Stanley sent its October 11 correspondence, Morgan Stanley discovered that Defendants and/or their assistants printed out highly confidential client information in the days leading up to their departures.  On October 2, 2023, just three days prior to Defendants' resignations, one of Defendants' assistants printed out Required Minimum Distribution ("RMD") information on the clients Defendants serviced, which include client names, account numbers, account balances, available cash, and estimated RMD amount.  Prior to leaving Morgan Stanley, Defendants and/or their assistants also printed out an account statement for a Morgan Stanley client maintaining over $15 million in assets with Morgan

7

Stanley, and detailed holdings information on another client maintaining over $100 million in assets with Morgan Stanley. In its October 11 correspondence, Morgan Stanley simply required that Defendants sign sworn Declarations that they retained no client information and that they have fully abided by their straight forward non-solicitation obligations.

24. **Morgan Stanley received no response to its October 11 correspondence.**

25. Defendants already have succeeded in diverting nearly $100 million in client assets to their new firm.

26. Unless Defendants are enjoined from violating the terms of their Agreements and other obligations to Morgan Stanley, Morgan Stanley will be irreparably harmed.

27. Morgan Stanley has no adequate remedy at law.

## COUNT I
## (BREACH OF CONTRACT)

28. The allegations of Paragraphs 1 through 27 are incorporated herein by reference with the same force and effect as if set forth in full below.

29. Defendants have breached the provisions of their Agreements, the FAP Agreements, the Code of Conduct, and other contractual obligations.

30. As a direct and proximate consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

## COUNT II
## (BREACH OF THE DUTY OF LOYALTY)

31. The allegations of Paragraphs 1 through 30 are incorporated herein by reference with the same force and effect as if set forth in full below.

32. Defendants had a duty at all times throughout their employment to act in the best interests of Morgan Stanley.

33. Falsely telling clients that Defendant Leyda "ran" or "managed" the Vero Beach office is a breach of Defendants' duty of loyalty to Morgan Stanley.

34. Any removal by one or more of the other Defendants prior to resigning of any information relating to Morgan Stanley's clients or business operations would constitute a violation of their duty of loyalty as well.

35. As a direct and proximate consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

## COUNT III
### (UNFAIR COMPETITION)

36. The allegations of Paragraphs 1 through 35 are incorporated herein by reference with the same force and effect as if set forth in full below.

37. Morgan Stanley had a reasonable expectation of continuing its business relationships with its existing clients and establishing new business relationships with clients referred to Morgan Stanley by its existing clients.

38. Defendants had knowledge of Morgan Stanley's expectancy of continuing its business relationships with its existing clients and establishing new business relationships with clients referred to Morgan Stanley by its existing clients.

39. Defendants engaged in purposeful or intentional interference that prevented Morgan Stanley from retaining its existing client relationships and establishing new business relationships with clients referred to Morgan Stanley by its existing clients.

40. As a direct and proximate cause of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in the above-referenced Counts, Morgan Stanley respectfully requests:

A TRO and/or preliminary injunction issue immediately, enjoining Defendants, directly or indirectly, and whether alone or in concert with others, from:

(i) Soliciting or attempting to solicit any Morgan Stanley clients they serviced, or whose names became known to them, while in the employ of Morgan Stanley or as a result of their employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds, or any other line of business in which Morgan Stanley or any of its affiliates is engaged (excluding Defendants' immediate family);

(ii) Soliciting the business of any clients of Morgan Stanley whom Defendants Leyda and Campione serviced, or whose names became known to them, in connection with the <u>Former Advisor Program Joint Active Advisor Agreement</u> (the "FAP Agreement"), while in the employ of Morgan Stanley or as a result of Defendants' employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantages investments, mutual funds, or any other line of business in which Morgan Stanley or any of its affiliates is engaged (excluding members of Defendants' family);

(iii) Using, disclosing, or transmitting for any purpose, any records, documents, or information relating in any way to the clients, business or marketing strategies, or business operations of Morgan Stanley, whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

(iv) Retaining, in any form, including without limitation original, copied, handwritten, computerized, or any other form, any Records and Information; and

(v) All other such acts as this Court deems appropriate for injunctive relief.

WHEREFORE, by virtue of the foregoing acts complained of above, Morgan Stanley demands judgment in its favor and against Defendants for a TRO and/or preliminary injunctive relief pending the outcome of arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration of Arbitration Procedure.

Dated this 13th day of October, 2023

By: */s/ Daniel K. Miles*
Daniel K. Miles
Florida Bar No. 119930
dmiles@fordharrison.com
**FordHarrison LLP**
401 E. Jackson Street, Suite 2500
Tampa, FL  33602
Telephone: (813) 261-7800
Fax: (813) 261-7899

Of Counsel:

Christopher C. Coss
ccc@cossmomjian.com
Thomas J. Momjian
tjm@cossmomjian.com
*Pro Hac Vice Forthcoming*
**Coss & Momjian, LLP**
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
Telephone: (610) 667-6800
Fax: (610) 667-8174

***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I will send a copy via electronic mail to the following:

Sharron Ash, Esq.<br>
Hamburger Law Firm, LLC<br>
61 W. Palisade Ave.<br>
Englewood, NJ 07631-2706<br>
sash@cnsl.me

                                                 */s/ Daniel K. Miles*
                                                 Attorney