# **EXHIBIT I**

# Coss & Momjian, LLP

Attorneys at Law

Two Bala Plaza, Suite 300

Bala Cynwyd, PA 19004

Telephone: 610-667-6800

Fax: 610-667-8174

October 11, 2023

**<u>Via Email</u>**

Sharron Ash, Esq.
Hamburger Law Firm LLC
61 W. Palisade Avenue
Englewood, NJ 07631-2706

      Re: <u>Trent Leyda, Kay Campione and James Beindorf</u>

Dear Sharron:

In your email of October 7, 2023, you stated that "we have no problem confirming they have nothing. I'll confirm more formally after the weekend but wanted to get you this preliminary response." We have yet to receive your formal response but in the interim want to alert you of some disturbing circumstances recently brought to our attention by Morgan Stanley.

After inspection of the departed employees' offices/work area, Morgan Stanley could locate hardly any client files or documents. Please explain the whereabout of these materials. Also, about a week prior to their *en masse* resignations, Heather Tritt informed Morgan Stanley management that she allegedly lost her corporate cell phone. Although Morgan Stanley turned off her access to it, she would still be able to access all of the phone's contacts provided that she never lost it, or if she truly did lose it but found it later. Please confirm Ms. Tritt's position on her cell phone. Please also note that the departed employees' printing activity in the days leading up to their resignations was very suspicious, and Morgan Stanley's investigation is continuing in this regard. As a result of all the foregoing, Morgan Stanley requires that Mr. Leyda and his team sign the attached Declarations under the penalty of perjury.

In addition, Morgan Stanley clients are being told that Trent Leyda was the "manager" of Morgan Stanley's Vero Beach office and/or that he "ran" the office. Morgan Stanley clients are

also being told that "no one is left" in Vero Beach.  These statements are all false.   Demand is hereby made that your clients cease and desist making these false statements immediately.

Moreover, in connection with the retirement of Morgan Stanley financial advisor Jeffrey Pearson, Mr. Leyda and Ms. Campione signed the Former Advisor Program Active Advisor Agreement (the "FAP Agreement") (copies enclosed), wherein they agreed that, "following the termination of your employment for any reason, for a period of one year or the remainder of the Payment Period, whichever is longer, you will not solicit or attempt to solicit, directly or indirectly, any of the Clients who were served by you or any other Active Advisor in connection with this FAP Arrangement, or whose names became known to you in connection with this FAP Arrangement, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley . . . ."   The terms of this particular non-solicitation provision expire on March 31, 2028.

They also "acknowledge[d] that the Former Advisor Client Accounts and the above-described information and documents are highly confidential, proprietary, and the property of Morgan Stanley, and the misuse or misappropriation of such information would be of immeasurable loss and detriment to Morgan Stanley." *Id.*

In their FAP Agreement, they also agreed that "[i]n the event you breach any of your obligations set forth in the Non-Solicitation of Clients and Confidentiality Obligations provisions above, you agree that Morgan Stanley will be entitled to injunctive relief specified in this Agreement.  You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration . . . ."

Further, if they violate the non-solicitation and/or confidentiality provisions set forth in the FAP Agreement, they agreed to pay Morgan Stanley damages in the amount of "two-hundred fifty percent (250%) of the Trailing 12-month Gross Revenue generated from client assets transferred from Morgan Stanley."  They also agreed to pay Morgan Stanley its costs, including its reasonable attorneys' fees, in connection with the enforcement of the FAP Agreement.

In addition, as set forth in my prior letter to you, this letter requests immediate action on your clients' part to preserve all documents and information, including electronically-stored information that may contain evidence relevant to the above matter.  This includes, but is not limited to, email and other electronic communications; electronically stored documents, images, graphics, recordings, spreadsheets, databases; calendars, telephone records and logs, internet usage, files, deleted files, cache files, user information, and other data.  Further this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail, and other data.  All operating systems, software, applications, hardware, operating manuals codes, keys, and other support information needed to fully search, use, and access the electronically stored information must also be preserved.

Morgan Stanley demands a response to this letter by the close of business today, including the delivery of all the executed declarations.  Morgan Stanley reserves all of its rights.

Very truly yours,

*Tom Momjian*

Thomas J. Momjian

## **DECLARATION**

I, Trent Leyda, do hereby depose and state:

1.     I was employed Morgan Stanley Smith Barney LLC ("Morgan Stanley") in Vero Beach, Florida until my employment terminated on October 5, 2023.  At the time of my resignation from Morgan Stanley and upon leaving Morgan Stanley, I did not retain any information pertaining to the clients I serviced at Morgan Stanley, including any records, documents, memoranda, notes, electronic data or other information in any form (including on my personal cell phone) containing information of Morgan Stanley and its clients, including, but not limited to, client names, addresses, telephone numbers, email addresses, and/or account information ("Morgan Stanley Information").  To the extent I contacted Morgan Stanley clients after I resigned from Morgan Stanley, I used exclusively information I and/or other members of my team found in publicly available sources after I resigned.   Moreover, I have not solicited any Morgan Stanley clients, and I intend to abide fully by my non-solicitation obligations.

2.     I have not sent or provided any Morgan Stanley Information to anyone outside of Morgan Stanley, including, but not limited to, any person employed by or affiliated with my current firm in connection with my efforts to secure employment or in connection with preparing for employment or following my departure from Morgan Stanley.  I have not used any Morgan Stanley Information after termination of my employment with Morgan Stanley.

3.     I further acknowledge and agree that solely because of and based on my representations and warranties in this declaration, Morgan Stanley has agreed to refrain from pursuing immediate legal and other recourse against me in connection with the removal from Morgan Stanley of its customer information and other confidential and proprietary information of Morgan Stanley.  Morgan Stanley is relying on my execution of this declaration to assure Morgan Stanley that I have fully complied with the specific promises contained in paragraphs 1 and 2, and that I shall not seek to damage or harm Morgan Stanley or any of its ongoing business enterprises, while pursuing my personal and professional interests in any subsequent endeavor.  I understand that Morgan Stanley fully reserves its rights to pursue any and all remedies against me in the event that my actions threaten or cause damage to Morgan Stanley or its business interests.

4.     I understand that any failure to fulfill completely and fully the obligations and promises contained in paragraphs 1 and 2 or any determination that any of the statements or representations made in this declaration are misleading, purposefully inaccurate or untrue would cause Morgan Stanley great and irreparable harm, for which Morgan Stanley will have no adequate remedy at law.  As such, I understand and acknowledge that, in addition to any and all other rights and remedies Morgan Stanley may have to seek actual and consequential damages flowing both directly and indirectly from my breach of these representations and warranties from me personally and from other parties, Morgan Stanley, without having to demonstrate such harm, shall be entitled to immediate injunctive and other equitable relief against me to prevent a breach or

continued breach of my representations and warranties.  I understand and acknowledge that Morgan Stanley fully reserves its rights to pursue these and any other remedies against third parties in the event such parties act in concert or otherwise with me to breach or violate the statements or representations made in this declaration.

I swear, under penalty of perjury, that the above statement is true.


DATE:  _____, 2023



_____
Trent Leyda

2

## DECLARATION

I, Kay Campione, do hereby depose and state:

1.     I was employed by Morgan Stanley Smith Barney LLC ("Morgan Stanley") in Vero Beach, Florida until my employment terminated on October 5, 2023. At the time of my resignation from Morgan Stanley and upon leaving Morgan Stanley, I did not retain any information pertaining to the clients I serviced at Morgan Stanley, including any records, documents, memoranda, notes, electronic data or other information in any form (including on my personal cell phone) containing information of Morgan Stanley and its clients, including, but not limited to, client names, addresses, telephone numbers, email addresses, and/or account information ("Morgan Stanley Information").  To the extent I contacted Morgan Stanley clients after I resigned from Morgan Stanley, I used exclusively information I and/or other members of my team found in publicly available sources after I resigned.  Moreover, I have not solicited any Morgan Stanley clients, and I intend to abide fully by my non-solicitation obligations.

2.     I have not sent or provided any Morgan Stanley Information to anyone outside of Morgan Stanley, including, but not limited to, any person employed by or affiliated with my current firm in connection with my efforts to secure employment or in connection with preparing for employment or following my departure from Morgan Stanley.  I have not used any Morgan Stanley Information after termination of my employment with Morgan Stanley.

3.     I further acknowledge and agree that solely because of and based on my representations and warranties in this declaration, Morgan Stanley has agreed to refrain from pursuing immediate legal and other recourse against me in connection with the removal from Morgan Stanley of its customer information and other confidential and proprietary information of Morgan Stanley.  Morgan Stanley is relying on my execution of this declaration to assure Morgan Stanley that I have fully complied with the specific promises contained in paragraphs 1 and 2, and that I shall not seek to damage or harm Morgan Stanley or any of its ongoing business enterprises, while pursuing my personal and professional interests in any subsequent endeavor.  I understand that Morgan Stanley fully reserves its rights to pursue any and all remedies against me in the event that my actions threaten or cause damage to Morgan Stanley or its business interests.

4.     I understand that any failure to fulfill completely and fully the obligations and promises contained in paragraphs 1 and 2 or any determination that any of the statements or representations made in this declaration are misleading, purposefully inaccurate or untrue would cause Morgan Stanley great and irreparable harm, for which Morgan Stanley will have no adequate remedy at law.  As such, I understand and acknowledge that, in addition to any and all other rights and remedies Morgan Stanley may have to seek actual and consequential damages flowing both directly and indirectly from my breach of these representations and warranties from me personally and from other parties, Morgan Stanley, without having to demonstrate such harm, shall be entitled to immediate injunctive and other equitable relief against me to prevent a breach or

continued breach of my representations and warranties.  I understand and acknowledge that Morgan Stanley fully reserves its rights to pursue these and any other remedies against third parties in the event such parties act in concert or otherwise with me to breach or violate the statements or representations made in this declaration.

I swear, under penalty of perjury, that the above statement is true.

DATE: _____, 2023

_____
Kay Campione

2

## DECLARATION

I, James Beindorf, do hereby depose and state:

1.      I was employed by Morgan Stanley Smith Barney LLC ("Morgan Stanley") in Vero Beach, Florida until my employment terminated on October 5, 2023. At the time of my resignation from Morgan Stanley and upon leaving Morgan Stanley, I did not retain any information pertaining to the clients I serviced at Morgan Stanley, including any records, documents, memoranda, notes, electronic data or other information in any form (including on my personal cell phone) containing information of Morgan Stanley and its clients, including, but not limited to, client names, addresses, telephone numbers, email addresses, and/or account information ("Morgan Stanley Information").  To the extent I contacted Morgan Stanley clients after I resigned from Morgan Stanley, I used exclusively information I and/or other members of my team found in publicly available sources after I resigned.  Moreover, I have not solicited any Morgan Stanley clients, and I intend to abide fully by my non-solicitation obligations.

2.      I have not sent or provided any Morgan Stanley Information to anyone outside of Morgan Stanley, including, but not limited to, any person employed by or affiliated with my current firm in connection with my efforts to secure employment or in connection with preparing for employment or following my departure from Morgan Stanley.  I have not used any Morgan Stanley Information after termination of my employment with Morgan Stanley.

3.      I further acknowledge and agree that solely because of and based on my representations and warranties in this declaration, Morgan Stanley has agreed to refrain from pursuing immediate legal and other recourse against me in connection with the removal from Morgan Stanley of its customer information and other confidential and proprietary information of Morgan Stanley.  Morgan Stanley is relying on my execution of this declaration to assure Morgan Stanley that I have fully complied with the specific promises contained in paragraphs 1 and 2, and that I shall not seek to damage or harm Morgan Stanley or any of its ongoing business enterprises, while pursuing my personal and professional interests in any subsequent endeavor.  I understand that Morgan Stanley fully reserves its rights to pursue any and all remedies against me in the event that my actions threaten or cause damage to Morgan Stanley or its business interests.

4.      I understand that any failure to fulfill completely and fully the obligations and promises contained in paragraphs 1 and 2 or any determination that any of the statements or representations made in this declaration are misleading, purposefully inaccurate or untrue would cause Morgan Stanley great and irreparable harm, for which Morgan Stanley will have no adequate remedy at law.  As such, I understand and acknowledge that, in addition to any and all other rights and remedies Morgan Stanley may have to seek actual and consequential damages flowing both directly and indirectly from my breach of these representations and warranties from me personally and from other parties, Morgan Stanley, without having to demonstrate such harm, shall be entitled to immediate injunctive and other equitable relief against me to prevent a breach or

continued breach of my representations and warranties. I understand and acknowledge that Morgan Stanley fully reserves its rights to pursue these and any other remedies against third parties in the event such parties act in concert or otherwise with me to breach or violate the statements or representations made in this declaration.

I swear, under penalty of perjury, that the above statement is true.

DATE: _____, 2023

_____

James Beindorf

## **DECLARATION**

I, Heather Tritt, do hereby depose and state:

1.      I was employed by Morgan Stanley Smith Barney LLC ("Morgan Stanley") in Vero Beach, Florida until my employment terminated on October 5, 2023. At the time of my resignation from Morgan Stanley and upon leaving Morgan Stanley, I did not retain any information pertaining to the clients I serviced at Morgan Stanley, including any records, documents, memoranda, notes, electronic data or other information in any form (including on my personal cell phone) containing information of Morgan Stanley and its clients, including, but not limited to, client names, addresses, telephone numbers, email addresses, and/or account information ("Morgan Stanley Information").  In addition, during the week of September 25, 2023, I lost my Morgan Stanley corporate cell phone.  I have not found it, and I have not accessed it since I lost it.

2.      I have not sent or provided any Morgan Stanley Information to anyone outside of Morgan Stanley, including, but not limited to, any person employed by or affiliated with my current firm in connection with my efforts to secure employment or in connection with preparing for employment or following my departure from Morgan Stanley.  I have not used any Morgan Stanley Information after termination of my employment with Morgan Stanley.

3.      I further acknowledge and agree that solely because of and based on my representations and warranties in this declaration, Morgan Stanley has agreed to refrain from pursuing immediate legal and other recourse against me in connection with the removal from Morgan Stanley of its customer information and other confidential and proprietary information of Morgan Stanley.  Morgan Stanley is relying on my execution of this declaration to assure Morgan Stanley that I have fully complied with the specific promises contained in paragraphs 1 and 2, and that I shall not seek to damage or harm Morgan Stanley or any of its ongoing business enterprises, while pursuing my personal and professional interests in any subsequent endeavor.  I understand that Morgan Stanley fully reserves its rights to pursue any and all remedies against me in the event that my actions threaten or cause damage to Morgan Stanley or its business interests.

4.      I understand that any failure to fulfill completely and fully the obligations and promises contained in paragraphs 1 and 2 or any determination that any of the statements or representations made in this declaration are misleading, purposefully inaccurate or untrue would cause Morgan Stanley great and irreparable harm, for which Morgan Stanley will have no adequate remedy at law.  As such, I understand and acknowledge that, in addition to any and all other rights and remedies Morgan Stanley may have to seek actual and consequential damages flowing both directly and indirectly from my breach of these representations and warranties from me personally and from other parties, Morgan Stanley, without having to demonstrate such harm, shall be entitled to immediate injunctive and other equitable relief against me to prevent a breach or continued breach of my representations and warranties.  I understand and acknowledge that Morgan Stanley fully reserves its rights to pursue these and any other remedies

1

against third parties in the event such parties act in concert or otherwise with me to breach or violate the statements or representations made in this declaration.

I swear, under penalty of perjury, that the above statement is true.


DATE: _____, 2023



_____
Heather Tritt

## **DECLARATION**

I, Susie Zimmerman, do hereby depose and state:

1.       I was employed by Morgan Stanley Smith Barney LLC ("Morgan Stanley") in Vero Beach, Florida until my employment terminated on October 5, 2023. At the time of my resignation from Morgan Stanley and upon leaving Morgan Stanley, I did not retain any information pertaining to the clients I serviced at Morgan Stanley, including any records, documents, memoranda, notes, electronic data or other information in any form (including on my personal cell phone) containing information of Morgan Stanley and its clients, including, but not limited to, client names, addresses, telephone numbers, email addresses, and/or account information ("Morgan Stanley Information").

2.       I have not sent or provided any Morgan Stanley Information to anyone outside of Morgan Stanley, including, but not limited to, any person employed by or affiliated with my current firm in connection with my efforts to secure employment or in connection with preparing for employment or following my departure from Morgan Stanley.  I have not used any Morgan Stanley Information after termination of my employment with Morgan Stanley.

3.       I further acknowledge and agree that solely because of and based on my representations and warranties in this declaration, Morgan Stanley has agreed to refrain from pursuing immediate legal and other recourse against me in connection with the removal from Morgan Stanley of its customer information and other confidential and proprietary information of Morgan Stanley.  Morgan Stanley is relying on my execution of this declaration to assure Morgan Stanley that I have fully complied with the specific promises contained in paragraphs 1 and 2, and that I shall not seek to damage or harm Morgan Stanley or any of its ongoing business enterprises, while pursuing my personal and professional interests in any subsequent endeavor.  I understand that Morgan Stanley fully reserves its rights to pursue any and all remedies against me in the event that my actions threaten or cause damage to Morgan Stanley or its business interests.

4.       I understand that any failure to fulfill completely and fully the obligations and promises contained in paragraphs 1 and 2 or any determination that any of the statements or representations made in this declaration are misleading, purposefully inaccurate or untrue would cause Morgan Stanley great and irreparable harm, for which Morgan Stanley will have no adequate remedy at law.  As such, I understand and acknowledge that, in addition to any and all other rights and remedies Morgan Stanley may have to seek actual and consequential damages flowing both directly and indirectly from my breach of these representations and warranties from me personally and from other parties, Morgan Stanley, without having to demonstrate such harm, shall be entitled to immediate injunctive and other equitable relief against me to prevent a breach or continued breach of my representations and warranties.  I understand and acknowledge that Morgan Stanley fully reserves its rights to pursue these and any other remedies

1

against third parties in the event such parties act in concert or otherwise with me to breach or violate the statements or representations made in this declaration.

I swear, under penalty of perjury, that the above statement is true.

DATE: _____, 2023

_____
Susie Zimmerman

## **DECLARATION**

I, Tara Carabello, do hereby depose and state:

1.      I was employed by Morgan Stanley Smith Barney LLC ("Morgan Stanley") in Vero Beach, Florida until my employment terminated on October 5, 2023. At the time of my resignation from Morgan Stanley and upon leaving Morgan Stanley, I did not retain any information pertaining to the clients I serviced at Morgan Stanley, including any records, documents, memoranda, notes, electronic data or other information in any form (including on my personal cell phone) containing information of Morgan Stanley and its clients, including, but not limited to, client names, addresses, telephone numbers, email addresses, and/or account information ("Morgan Stanley Information").

2.      I have not sent or provided any Morgan Stanley Information to anyone outside of Morgan Stanley, including, but not limited to, any person employed by or affiliated with my current firm in connection with my efforts to secure employment or in connection with preparing for employment or following my departure from Morgan Stanley.  I have not used any Morgan Stanley Information after termination of my employment with Morgan Stanley.

3.      I further acknowledge and agree that solely because of and based on my representations and warranties in this declaration, Morgan Stanley has agreed to refrain from pursuing immediate legal and other recourse against me in connection with the removal from Morgan Stanley of its customer information and other confidential and proprietary information of Morgan Stanley.  Morgan Stanley is relying on my execution of this declaration to assure Morgan Stanley that I have fully complied with the specific promises contained in paragraphs 1 and 2, and that I shall not seek to damage or harm Morgan Stanley or any of its ongoing business enterprises, while pursuing my personal and professional interests in any subsequent endeavor.  I understand that Morgan Stanley fully reserves its rights to pursue any and all remedies against me in the event that my actions threaten or cause damage to Morgan Stanley or its business interests.

4.      I understand that any failure to fulfill completely and fully the obligations and promises contained in paragraphs 1 and 2 or any determination that any of the statements or representations made in this declaration are misleading, purposefully inaccurate or untrue would cause Morgan Stanley great and irreparable harm, for which Morgan Stanley will have no adequate remedy at law.  As such, I understand and acknowledge that, in addition to any and all other rights and remedies Morgan Stanley may have to seek actual and consequential damages flowing both directly and indirectly from my breach of these representations and warranties from me personally and from other parties, Morgan Stanley, without having to demonstrate such harm, shall be entitled to immediate injunctive and other equitable relief against me to prevent a breach or continued breach of my representations and warranties.  I understand and acknowledge that Morgan Stanley fully reserves its rights to pursue these and any other remedies

against third parties in the event such parties act in concert or otherwise with me to breach or violate the statements or representations made in this declaration.

I swear, under penalty of perjury, that the above statement is true.

DATE: _____, 2023

_____
Tara Carabello

**MORGAN STANLEY WEALTH MANAGEMENT
FORMER ADVISOR PROGRAM
ACTIVE ADVISOR AGREEMENT**

**THIS AGREEMENT** is made this 1st day of March, 2023 by and between MORGAN STANLEY SMITH BARNEY LLC, a limited liability company formed under the laws of Delaware ("Morgan Stanley") and Trent Leyda (FA# 668-265), a full time registered Financial Advisor/Private Wealth Advisor ("FA/PWA") of Morgan Stanley (the "Active Advisor", "you" or "your").

## INTRODUCTION

Morgan Stanley developed the Morgan Stanley Wealth Management Former Advisor Program ("FAP") to provide a process for the orderly transition and servicing of eligible client households to one or more FAs/PWAs when a FA/PWA decides to finish his or her career at Morgan Stanley. Jeffrey Pearson, an FA/PWA for over 33 years with Morgan Stanley (the "Former Advisor"),[1] is participating in the FAP and terminating (or has terminated) employment from Morgan Stanley effective March 31st, 2023 (the "Termination Date"). For purposes of this Agreement, Morgan Stanley shall include Morgan Stanley Smith Barney LLC and any and all former and existing parents, subsidiaries, predecessors, successors and affiliate entities and its and their respective current and former directors, officers, employees, agents, managers, shareholders, successors, assigns, and other representatives. In an effort, among other things, to induce the Former Advisor to encourage those clients serviced by the Former Advisor (the "Clients") to remain at Morgan Stanley, an agreement between Morgan Stanley and the Former Advisor has been negotiated whereby certain client accounts serviced by the Former Advisor at the time of his/her employment termination (the "Client Accounts") will be serviced by active full-time FAs/PWAs selected by Morgan Stanley management.

## REVENUE SHARING:

The Former Advisor will receive credit for a certain percentage of all gross revenues generated from the Client Accounts for a defined period of production months from the Termination Date (the "Payment Period") as set forth in the Former Advisor's Agreement with Morgan Stanley. The sharing of commissions will be limited to commissions derived from accounts held for continuing customers of the Former Advisor at the time of his/her retirement. The Former Advisor may receive compensation in connection with money that is added to these customers' accounts, regardless of whether the money is added to an existing account of, or to a new account opened by, a continuing customer of the Former Advisor after his/her retirement. <u>Accounts for new customers must be placed outside of the revenue share arrangement with the Former Advisor.</u>

Contingent upon your execution of this Agreement, you are currently a designated Active Advisor on this FAP Arrangement and, while serving as an Active Advisor on this FAP Arrangement, you will receive credit for a certain percentage of gross revenues generated from the Client Accounts for which you are a designated Active Advisor during the Payment Period as follows:

---

[1] In the event of the Former Advisor's death, the term "Former Advisor" herein shall mean the Former Advisor's estate.

For eligible Client Accounts previously serviced under Joint Production Number 517-095

| Production Months: | | Percentage to Active Advisor(s): |
|---|---|---|
| From (MM/YY): | Through (MM/YY): | % |
| 04/23 | 03/24 | 13.81% |
| 04/24 | 03/25 | 17.12% |
| 04/25 | 03/26 | 20.42% |
| 04/26 | 03/27 | 23.72% |
| 04/27 | 03/28 | 27.03% |

You understand that your earned incentive compensation will continue to be in accordance with Morgan Stanley's regular Credit Rate Schedule, as may be amended from time to time, and will be subject to applicable payroll taxes and withholdings.

## CONFIDENTIALITY OBLIGATIONS:

As a designated Active Advisor on this FAP Arrangement, you will have access to confidential customer information regarding certain clients whose accounts the Former Advisor serviced as of the Termination Date ("Clients") and Former Advisor Client Accounts ("Client Accounts") including, but not limited to: Client files, Client Account histories and Client Account titles and numbers; the names, addresses, telephone numbers, e-mail addresses and other contact information of the Clients; and assets and obligations carried in the accounts of the Clients.  You acknowledge that the Former Advisor Client Accounts and the above-described information and documents are highly confidential, proprietary and the property of Morgan Stanley, and the misuse or misappropriation of such information would be of immeasurable loss and detriment to Morgan Stanley.  All the above-described information and documents are hereinafter collectively referred to as "Confidential Trade Secret Information."  You agree that (a) your use of Confidential Trade Secret Information will stop immediately upon the suspension or termination of your employment relationship with Morgan Stanley for any reason; and (b) you will immediately deliver to Morgan Stanley at the time of suspension or termination of your employment or at any other time upon Morgan Stanley's request, any Confidential Trade Secret Information in your possession or control. In addition, you agree that, you will not continue to maintain in your possession or control any Former Advisor Client Accounts Confidential Trade Secret Information, in either original or copied form and regardless of whether the Former Advisor Client Accounts Confidential Trade Secret Information is in hard copy or electronic form, after your employment with Morgan Stanley is voluntarily or involuntarily terminated or suspended.

## NON-SOLICITATION OF CLIENTS:

You understand and agree, by execution of this Agreement, that following the termination of your employment for any reason, for a period of one year or the remainder of the Payment Period, whichever is longer, you will not solicit or attempt to solicit, directly or indirectly, any of the Clients who were served by you or any other Active Advisor in connection with this FAP Arrangement, or whose names became known to you in connection with this FAP Arrangement, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantages investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged.  For purposes of this Agreement, the term "solicit" includes initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged, or otherwise discontinuing his/her/its existing business relationship with Morgan Stanley.  This

restriction exists notwithstanding any relationship that may develop between you and the holder(s) of any of the Former Advisor Client Accounts, how long the Former Advisor Client Accounts are serviced by you, or any changes in the Former Advisor Client Accounts, while they are being serviced by you. These restrictions will not apply to your post-employment solicitation of Clients that occurs in California so long as you were a California-based employee for Morgan Stanley, and such solicitation does not involve the use of protected trade secret information. These restrictions will terminate upon termination of the Payment Period with regard to any Clients or Client Accounts that you had serviced prior to this FAP Arrangement.

You agree and acknowledge that you have been given at least fourteen (14) days to consider executing this Agreement ("Review Period") and to consult with your attorney or other representative of your choice prior to executing the Agreement. If you execute the Agreement prior to the end of the Review Period that Morgan Stanley has provided for you, you agree and acknowledge that your execution was a knowing and voluntary waiver of your right to consider this Agreement for the full 14 days and you had sufficient time in which to review it with your attorney or other representative of your choice. You also agree and acknowledge that the compensation and other benefits paid to you under this Agreement, other written agreements between you and Morgan Stanley, and any compensation policy of the Firm, constitutes sufficient and adequate consideration for your agreement to the restrictive covenants contained in this Agreement.

## RIGHT TO INJUNCTION:

In the event you breach any of your obligations set forth in the Non-Solicitation of Clients and Confidentiality Obligations provisions above, you agree that Morgan Stanley will be entitled to injunctive relief specified in this Agreement. You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration (as provided for below). Therefore, you CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION ordering:

a) that you immediately return to Morgan Stanley all Confidential Trade Secret Information, whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any information contained in such materials; and

b) that, following the termination of your employment for any reason, for a period of one year or the remainder of the Payment Period, whichever is longer, you will not solicit or attempt to solicit, directly or indirectly, any of the Clients who were served by you or any Active Advisor in connection with this FAP Arrangement, or whose names became known to you in connection with this FAP Arrangement, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantages investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged.

You and Morgan Stanley have the right to apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, including upon the grounds set forth in California Code of Civil Procedure Section 1281.8 (where applicable). You and Morgan Stanley agree that your or Morgan Stanley's application to any court for temporary or preliminary injunctive relief will not constitute a waiver by you or Morgan Stanley of any right to arbitration as provided for in this Agreement, and that,

where such dispute is covered by this Agreement, any hearing on the merits in such dispute shall be conducted in arbitration pursuant to and in accordance with this Agreement.  If, after issuance of temporary or preliminary injunctive relief, the parties proceed to arbitration, you and Morgan Stanley agree that any applicable expedited hearing procedures for such arbitration shall apply.

## DAMAGES:

In the event you breach any of your obligations set forth in the Non-Solicitation of Clients and Confidentiality Obligations provisions above, you understand Morgan Stanley will suffer damages that will be difficult to quantify at the time of the violation, including, but not limited to: costs associated with investigating, monitoring, or remedying the misuse of Confidential Trade Secret Information; costs associated with maintaining, restoring or repairing Morgan Stanley's relationship with clients; revenue lost from Client assets transferred from Morgan Stanley or diverted from Morgan Stanley's business to another broker-dealer or investment advisory firm; revenue lost from client reductions in use of Morgan Stanley's services; costs associated with replacing employees, including recruiting, hiring and training replacement employees, and lost productivity.  In the event that you solicit or induce Morgan Stanley Clients in violation of the Non-Solicitation provision of this Agreement and/or use or disclose Confidential Trade Secret Information relating to Morgan Stanley or its Clients and/or Client Accounts in violation of the Confidential Trade Secret Information provision above, you agree to pay Morgan Stanley two-hundred fifty percent (250%) of the Trailing 12-month Gross Revenue (defined below)[2] generated from Client assets transferred from Morgan Stanley to another broker-dealer or investment advisory firm, for any Client who was solicited or induced and/or where Confidential Trade Secret Information of Clients and/or Client Accounts was used or disclosed.

It is agreed and understood that Morgan Stanley is not seeking a double recovery with respect to the application of the liquidated damages provisions contained herein, and that Morgan Stanley does not and will not seek liquidated damages in an amount greater than two-hundred fifty percent (250%) of the Trailing 12-month Gross Revenue generated from Client assets transferred from Morgan Stanley.  By way of example, if you breach both your client non-solicitation and confidentiality obligations under the Non-Solicitation of Clients and Confidentiality Obligations provisions of this Agreement, respectively, Morgan Stanley will be entitled to a total of two-hundred fifty percent (250%) of the Trailing 12-month Gross Revenue generated from Client assets transferred from Morgan Stanley notwithstanding its entitlement to liquidated damages under both sections identified above.  You agree that these formulas represent reasonable estimates of the compensatory damages that Morgan Stanley will incur as a result of violations of the Non-Solicitation of Clients and Confidentiality Obligations provisions in this Agreement, and are not a penalty.  These liquidated damages are in addition to any other non-compensatory relief that Morgan Stanley may be entitled to, including, but not limited to injunctive relief and/or punitive damages. Notwithstanding anything to the contrary contained herein, the method of calculating damages set forth under this Section "Damages" shall expire upon the end of the Payment Period.

## ARBITRATION AGREEMENT:

Active Advisor and Morgan Stanley hereby agree to be bound by the terms of the Arbitration Agreement[3] and the arbitration provisions of the CARE (Convenient Access to

---

[2] "Trailing 12-month Gross Revenue" is defined herein as the total amount of commissions and fees generated from Client assets during the preceding twelve (12) month period as determined by Morgan Stanley in its discretion.
[3] Located at:  http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Stored to Generate a URL/Wealth Management/Arbitration Agreement.pdf

Resolutions for Employees) Guidebook[4], and is incorporated by reference into this Agreement, and further agree that any Covered Claims (as defined in the Arbitration Agreement) will be resolved by final and binding arbitration on a non-class, non-collective, and non-representative action basis as set forth in the Arbitration Agreement and the arbitration provisions of the CARE Guidebook. The Arbitration Agreement, including the class action, collective action, and representative action waivers set forth in paragraph 4 thereof, and the arbitration provisions of the CARE Guidebook and the waivers set forth therein will be governed by and interpreted in accordance with the Federal Arbitration Act, but to the extent any issue relating to the Arbitration Agreement and/or the CARE Guidebook is governed by state law, it shall be governed by the laws of the State of New York without regard to choice of law principles.  If Active Advisor has any questions about the Arbitration Agreement or the arbitration provisions in the CARE Guidebook, please email them to carebox@mailbox.com. This paragraph will not be deemed a waiver of Active Advisor's or Morgan Stanley's right to seek injunctive or other provisional relief from any court, to the extent allowed by applicable law.

**RIGHT TO MAKE DISCLOSURES**

Nothing in this Agreement shall prohibit or restrict Active Advisor from (A) initiating communications directly with, cooperating with, providing information to or otherwise assisting in an investigation by the Securities and Exchange Commission, Financial Industry Regulatory Authority, the EEOC, or any other governmental or regulatory body or official(s) or self-regulatory organization ("SRO") regarding a possible violation of any applicable law, rule or regulation; (B) responding to any inquiry from any such governmental or regulatory body or official or SRO, including an inquiry about this Agreement or its underlying facts or circumstances; (C) testifying, participating or otherwise assisting in any regulatory or governmental action or proceeding relating to a possible violation of a law, rule or regulation; or (D) making any other disclosures that are protected by any applicable law or regulation.  Nothing in this agreement prevents you from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful.  Further, nothing in this Agreement requires Active Advisor to obtain Morgan Stanley's prior authorization to engage in or to notify Morgan Stanley of any such communications, cooperation, assistance, responses to inquiries, testimony, participation or disclosure as described in the preceding sentence.

**SUPPLEMENT:**

This Agreement supplements any other agreements or contracts you have previously entered into with Morgan Stanley relating to any restrictive covenants, non-disclosure, confidentiality, and non-solicitation restrictions. If you have previously entered into a written employment agreement with Morgan Stanley excluding any Clients or Client Accounts whom you had serviced at your prior firm ("Excluded Clients") from certain confidentiality and/or non-solicitation restrictions, which conflicts with such restrictions contained in this Agreement, then with regard to Excluded Clients, upon the end of the Payment Period, this Agreement shall no longer govern.

**SUCCESSORS, ASSIGNS, and AFFILIATES:**

The benefits and obligations of this Agreement will run to the successors, affiliates and assigns of Morgan Stanley.  You also acknowledge and agree that any agreement made by and

---

[4] Located at:  http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Linked-to-Content-on-Me-at-MS/USA/c/CARE%20Guidebook.pdf

between Morgan Stanley and the Former Advisor concerning FAP are for the sole benefit of Morgan Stanley and Former Advisor and their successors and permitted assigns, and they will not be construed as conferring any rights to the Active Advisor.

**GOVERNING LAW:**

Except for the provisions in the Arbitration Agreement paragraph above, Arbitration Agreement, and CARE Guidebook, which shall be governed by their terms, this Agreement will be governed, construed and enforced in accordance with the laws of the State of New York without regard to choice of law principles, unless you primarily reside in and your principal place of employment will be California, in which case this Agreement will be governed, construed and enforced in accordance with the laws of the State of California without regard to choice of law principles.

**WAIVER:**

Morgan Stanley's failure to enforce a breach of any covenant of this Agreement will not constitute a waiver of Morgan Stanley's right to enforce any other breach of the same or any other covenant.

**SEVERABILITY:**

a)   Except for the provisions in the Arbitration Agreement paragraph above, Arbitration Agreement, and CARE Guidebook, which shall be governed by their terms, if any provision or portion of any provision of this Agreement is, for any reason, adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body, or a court of competent jurisdiction, the remainder of the Agreement will remain in full force and effect.

b)   Except for the provisions in the Arbitration Agreement paragraph above, Arbitration Agreement, and CARE Guidebook, which shall be governed by their terms, if any of the covenants, including but not limited to restrictive covenants, contained in this Agreement or any part thereof are held to be unreasonable and/or unenforceable, the parties agree that the court or arbitrator(s) making such determination shall have the power to revise such provision(s), so as to render such provision(s) reasonable and enforceable, to the maximum extent permitted by law, upon which such provision(s) shall then be enforceable.

**ATTORNEYS' FEES:**

In the event of a breach of any of the terms of the paragraphs relating to Confidentiality Obligations, Non-Solicitation of Clients, Right to Injunction, and Damages in this Agreement by you, you agree to pay all fees and costs, including reasonable attorneys' fees, incurred by Morgan Stanley in connection with the enforcement of this Agreement.

**ACTIVE ADVISOR REPRESENTATION:**

You represent as follows:

**I HAVE READ AND REVIEWED THIS AGREEMENT AND THE ARBITRATION AGREEMENT[5] AND CARE GUIDEBOOK[6] IN THEIR ENTIRETY.  I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MORGAN STANLEY QUESTIONS ABOUT THEM.  I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND THE ARBITRATION AGREEMENT AND CARE GUIDEBOOK, INCLUDING THE CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION WAIVERS INCLUDING THEREIN, AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.  MY SIGNATURE BELOW INDICATES MY AGREEMENT TO ALL PROVISIONS HEREIN AND THE ARBITRATION AGREEMENT AND CARE GUIDEBOOK.**

Signed in the State of _____

**ACTIVE ADVISOR**

> **APPROVED**
> **By Trent Leyda at 2:45 pm, Mar 27, 2023**

_____
Date                                  Trent Leyda (Print Active Advisor Name)

                                      _____
                                      Trent Leyda (Signature of Active Advisor)


**REVIEWED AND APPROVED ON BEHALF OF MORGAN STANLEY SMITH BARNEY LLC**

_____          By: 
> APPROVED
> By vincent.celano at 12:04 pm, Mar 27, 2023
_____
Date                                  Vincent Celano, Branch Manager

---

[5] Located at:  http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Stored to Generate a URL/Wealth Management/Arbitration Agreement.pdf

[6] Located at:  http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Linked-to-Content-on-Me-at-MS/USA/c/CARE%20Guidebook.pdf

**MORGAN STANLEY WEALTH MANAGEMENT**
**FORMER ADVISOR PROGRAM**
**ACTIVE ADVISOR AGREEMENT**

**THIS AGREEMENT** is made this 1st day of March, 2023 by and between MORGAN STANLEY SMITH BARNEY LLC, a limited liability company formed under the laws of Delaware ("Morgan Stanley") and Hakyung Campione (FA# 668-645), a full time registered Financial Advisor/Private Wealth Advisor ("FA/PWA") of Morgan Stanley (the "Active Advisor", "you" or "your").

## INTRODUCTION

Morgan Stanley developed the Morgan Stanley Wealth Management Former Advisor Program ("FAP") to provide a process for the orderly transition and servicing of eligible client households to one or more FAs/PWAs when a FA/PWA decides to finish his or her career at Morgan Stanley. Jeffrey Pearson, an FA/PWA for over 33 years with Morgan Stanley (the "Former Advisor"),[1] is participating in the FAP and terminating (or has terminated) employment from Morgan Stanley effective March 31st, 2023 (the "Termination Date"). For purposes of this Agreement, Morgan Stanley shall include Morgan Stanley Smith Barney LLC and any and all former and existing parents, subsidiaries, predecessors, successors and affiliate entities and its and their respective current and former directors, officers, employees, agents, managers, shareholders, successors, assigns, and other representatives. In an effort, among other things, to induce the Former Advisor to encourage those clients serviced by the Former Advisor (the "Clients") to remain at Morgan Stanley, an agreement between Morgan Stanley and the Former Advisor has been negotiated whereby certain client accounts serviced by the Former Advisor at the time of his/her employment termination (the "Client Accounts") will be serviced by active full-time FAs/PWAs selected by Morgan Stanley management.

## REVENUE SHARING:

The Former Advisor will receive credit for a certain percentage of all gross revenues generated from the Client Accounts for a defined period of production months from the Termination Date (the "Payment Period") as set forth in the Former Advisor's Agreement with Morgan Stanley. The sharing of commissions will be limited to commissions derived from accounts held for continuing customers of the Former Advisor at the time of his/her retirement. The Former Advisor may receive compensation in connection with money that is added to these customers' accounts, regardless of whether the money is added to an existing account of, or to a new account opened by, a continuing customer of the Former Advisor after his/her retirement. Accounts for new customers must be placed outside of the revenue share arrangement with the Former Advisor.

Contingent upon your execution of this Agreement, you are currently a designated Active Advisor on this FAP Arrangement and, while serving as an Active Advisor on this FAP Arrangement, you will receive credit for a certain percentage of gross revenues generated from the Client Accounts for which you are a designated Active Advisor during the Payment Period as follows:

---

[1] In the event of the Former Advisor's death, the term "Former Advisor" herein shall mean the Former Advisor's estate.

For eligible Client Accounts previously serviced under Joint Production Number 517-095

| Production Months: | | Percentage to Active Advisor(s): |
|---|---|---|
| From (MM/YY): | Through (MM/YY): | % |
| 04/23 | 03/24 | 6.91% |
| 04/24 | 03/25 | 8.55% |
| 04/25 | 03/26 | 10.21% |
| 04/26 | 03/27 | 11.86% |
| 04/27 | 03/28 | 13.51% |

You understand that your earned incentive compensation will continue to be in accordance with Morgan Stanley's regular Credit Rate Schedule, as may be amended from time to time, and will be subject to applicable payroll taxes and withholdings.

**CONFIDENTIALITY OBLIGATIONS:**

As a designated Active Advisor on this FAP Arrangement, you will have access to confidential customer information regarding certain clients whose accounts the Former Advisor serviced as of the Termination Date ("Clients") and Former Advisor Client Accounts ("Client Accounts") including, but not limited to: Client files, Client Account histories and Client Account titles and numbers; the names, addresses, telephone numbers, e-mail addresses and other contact information of the Clients; and assets and obligations carried in the accounts of the Clients.  You acknowledge that the Former Advisor Client Accounts and the above-described information and documents are highly confidential, proprietary and the property of Morgan Stanley, and the misuse or misappropriation of such information would be of immeasurable loss and detriment to Morgan Stanley.  All the above-described information and documents are hereinafter collectively referred to as "Confidential Trade Secret Information."  You agree that (a) your use of Confidential Trade Secret Information will stop immediately upon the suspension or termination of your employment relationship with Morgan Stanley for any reason; and (b) you will immediately deliver to Morgan Stanley at the time of suspension or termination of your employment or at any other time upon Morgan Stanley's request, any Confidential Trade Secret Information in your possession or control.  In addition, you agree that, you will not continue to maintain in your possession or control any Former Advisor Client Accounts Confidential Trade Secret Information, in either original or copied form and regardless of whether the Former Advisor Client Accounts Confidential Trade Secret Information is in hard copy or electronic form, after your employment with Morgan Stanley is voluntarily or involuntarily terminated or suspended.

**NON-SOLICITATION OF CLIENTS:**

You understand and agree, by execution of this Agreement, that following the termination of your employment for any reason, for a period of one year or the remainder of the Payment Period, whichever is longer, you will not solicit or attempt to solicit, directly or indirectly, any of the Clients who were served by you or any other Active Advisor in connection with this FAP Arrangement, or whose names became known to you in connection with this FAP Arrangement, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantages investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged.  For purposes of this Agreement, the term "solicit" includes initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged, or otherwise discontinuing his/her/its existing business relationship with Morgan Stanley.  This

restriction exists notwithstanding any relationship that may develop between you and the holder(s) of any of the Former Advisor Client Accounts, how long the Former Advisor Client Accounts are serviced by you, or any changes in the Former Advisor Client Accounts, while they are being serviced by you. These restrictions will not apply to your post-employment solicitation of Clients that occurs in California so long as you were a California-based employee for Morgan Stanley, and such solicitation does not involve the use of protected trade secret information. These restrictions will terminate upon termination of the Payment Period with regard to any Clients or Client Accounts that you had serviced prior to this FAP Arrangement.

You agree and acknowledge that you have been given at least fourteen (14) days to consider executing this Agreement ("Review Period") and to consult with your attorney or other representative of your choice prior to executing the Agreement. If you execute the Agreement prior to the end of the Review Period that Morgan Stanley has provided for you, you agree and acknowledge that your execution was a knowing and voluntary waiver of your right to consider this Agreement for the full 14 days and you had sufficient time in which to review it with your attorney or other representative of your choice. You also agree and acknowledge that the compensation and other benefits paid to you under this Agreement, other written agreements between you and Morgan Stanley, and any compensation policy of the Firm, constitutes sufficient and adequate consideration for your agreement to the restrictive covenants contained in this Agreement.

## RIGHT TO INJUNCTION:

In the event you breach any of your obligations set forth in the Non-Solicitation of Clients and Confidentiality Obligations provisions above, you agree that Morgan Stanley will be entitled to injunctive relief specified in this Agreement. You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration (as provided for below). Therefore, you CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION ordering:

a) that you immediately return to Morgan Stanley all Confidential Trade Secret Information, whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any information contained in such materials; and

b) that, following the termination of your employment for any reason, for a period of one year or the remainder of the Payment Period, whichever is longer, you will not solicit or attempt to solicit, directly or indirectly, any of the Clients who were served by you or any Active Advisor in connection with this FAP Arrangement, or whose names became known to you in connection with this FAP Arrangement, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantages investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged.

You and Morgan Stanley have the right to apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, including upon the grounds set forth in California Code of Civil Procedure Section 1281.8 (where applicable). You and Morgan Stanley agree that your or Morgan Stanley's application to any court for temporary or preliminary injunctive relief will not constitute a waiver by you or Morgan Stanley of any right to arbitration as provided for in this Agreement, and that,

where such dispute is covered by this Agreement, any hearing on the merits in such dispute shall be conducted in arbitration pursuant to and in accordance with this Agreement.  If, after issuance of temporary or preliminary injunctive relief, the parties proceed to arbitration, you and Morgan Stanley agree that any applicable expedited hearing procedures for such arbitration shall apply.

## DAMAGES:

In the event you breach any of your obligations set forth in the Non-Solicitation of Clients and Confidentiality Obligations provisions above, you understand Morgan Stanley will suffer damages that will be difficult to quantify at the time of the violation, including, but not limited to: costs associated with investigating, monitoring, or remedying the misuse of Confidential Trade Secret Information; costs associated with maintaining, restoring or repairing Morgan Stanley's relationship with clients; revenue lost from Client assets transferred from Morgan Stanley or diverted from Morgan Stanley's business to another broker-dealer or investment advisory firm; revenue lost from client reductions in use of Morgan Stanley's services; costs associated with replacing employees, including recruiting, hiring and training replacement employees, and lost productivity.  In the event that you solicit or induce Morgan Stanley Clients in violation of the Non-Solicitation provision of this Agreement and/or use or disclose Confidential Trade Secret Information relating to Morgan Stanley or its Clients and/or Client Accounts in violation of the Confidential Trade Secret Information provision above, you agree to pay Morgan Stanley two-hundred fifty percent (250%) of the Trailing 12-month Gross Revenue (defined below)[2] generated from Client assets transferred from Morgan Stanley to another broker-dealer or investment advisory firm, for any Client who was solicited or induced and/or where Confidential Trade Secret Information of Clients and/or Client Accounts was used or disclosed.

It is agreed and understood that Morgan Stanley is not seeking a double recovery with respect to the application of the liquidated damages provisions contained herein, and that Morgan Stanley does not and will not seek liquidated damages in an amount greater than two-hundred fifty percent (250%) of the Trailing 12-month Gross Revenue generated from Client assets transferred from Morgan Stanley.  By way of example, if you breach both your client non-solicitation and confidentiality obligations under the Non-Solicitation of Clients and Confidentiality Obligations provisions of this Agreement, respectively, Morgan Stanley will be entitled to a total of two-hundred fifty percent (250%) of the Trailing 12-month Gross Revenue generated from Client assets transferred from Morgan Stanley notwithstanding its entitlement to liquidated damages under both sections identified above.  You agree that these formulas represent reasonable estimates of the compensatory damages that Morgan Stanley will incur as a result of violations of the Non-Solicitation of Clients and Confidentiality Obligations provisions in this Agreement, and are not a penalty.  These liquidated damages are in addition to any other non-compensatory relief that Morgan Stanley may be entitled to, including, but not limited to injunctive relief and/or punitive damages. Notwithstanding anything to the contrary contained herein, the method of calculating damages set forth under this Section "Damages" shall expire upon the end of the Payment Period.

## ARBITRATION AGREEMENT:

Active Advisor and Morgan Stanley hereby agree to be bound by the terms of the Arbitration Agreement[3] and the arbitration provisions of the CARE (Convenient Access to

---

[2] "Trailing 12-month Gross Revenue" is defined herein as the total amount of commissions and fees generated from Client assets during the preceding twelve (12) month period as determined by Morgan Stanley in its discretion.
[3] Located at:  http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Stored to Generate a URL/Wealth Management/Arbitration Agreement.pdf

Resolutions for Employees) Guidebook[4], and is incorporated by reference into this Agreement, and further agree that any Covered Claims (as defined in the Arbitration Agreement) will be resolved by final and binding arbitration on a non-class, non-collective, and non-representative action basis as set forth in the Arbitration Agreement and the arbitration provisions of the CARE Guidebook. The Arbitration Agreement, including the class action, collective action, and representative action waivers set forth in paragraph 4 thereof, and the arbitration provisions of the CARE Guidebook and the waivers set forth therein will be governed by and interpreted in accordance with the Federal Arbitration Act, but to the extent any issue relating to the Arbitration Agreement and/or the CARE Guidebook is governed by state law, it shall be governed by the laws of the State of New York without regard to choice of law principles. If Active Advisor has any questions about the Arbitration Agreement or the arbitration provisions in the CARE Guidebook, please email them to carebox@mailbox.com. This paragraph will not be deemed a waiver of Active Advisor's or Morgan Stanley's right to seek injunctive or other provisional relief from any court, to the extent allowed by applicable law.

## RIGHT TO MAKE DISCLOSURES

Nothing in this Agreement shall prohibit or restrict Active Advisor from (A) initiating communications directly with, cooperating with, providing information to or otherwise assisting in an investigation by the Securities and Exchange Commission, Financial Industry Regulatory Authority, the EEOC, or any other governmental or regulatory body or official(s) or self-regulatory organization ("SRO") regarding a possible violation of any applicable law, rule or regulation; (B) responding to any inquiry from any such governmental or regulatory body or official or SRO, including an inquiry about this Agreement or its underlying facts or circumstances; (C) testifying, participating or otherwise assisting in any regulatory or governmental action or proceeding relating to a possible violation of a law, rule or regulation; or (D) making any other disclosures that are protected by any applicable law or regulation. Nothing in this agreement prevents you from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful. Further, nothing in this Agreement requires Active Advisor to obtain Morgan Stanley's prior authorization to engage in or to notify Morgan Stanley of any such communications, cooperation, assistance, responses to inquiries, testimony, participation or disclosure as described in the preceding sentence.

## SUPPLEMENT:

This Agreement supplements any other agreements or contracts you have previously entered into with Morgan Stanley relating to any restrictive covenants, non-disclosure, confidentiality, and non-solicitation restrictions. If you have previously entered into a written employment agreement with Morgan Stanley excluding any Clients or Client Accounts whom you had serviced at your prior firm ("Excluded Clients") from certain confidentiality and/or non-solicitation restrictions, which conflicts with such restrictions contained in this Agreement, then with regard to Excluded Clients, upon the end of the Payment Period, this Agreement shall no longer govern.

## SUCCESSORS, ASSIGNS, and AFFILIATES:

The benefits and obligations of this Agreement will run to the successors, affiliates and assigns of Morgan Stanley. You also acknowledge and agree that any agreement made by and

---

[4] Located at: http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Linked-to-Content-on-Me-at-MS/USA/c/CARE%20Guidebook.pdf

between Morgan Stanley and the Former Advisor concerning FAP are for the sole benefit of Morgan Stanley and Former Advisor and their successors and permitted assigns, and they will not be construed as conferring any rights to the Active Advisor.

## GOVERNING LAW:

Except for the provisions in the Arbitration Agreement paragraph above, Arbitration Agreement, and CARE Guidebook, which shall be governed by their terms, this Agreement will be governed, construed and enforced in accordance with the laws of the State of New York without regard to choice of law principles, unless you primarily reside in and your principal place of employment will be California, in which case this Agreement will be governed, construed and enforced in accordance with the laws of the State of California without regard to choice of law principles.

## WAIVER:

Morgan Stanley's failure to enforce a breach of any covenant of this Agreement will not constitute a waiver of Morgan Stanley's right to enforce any other breach of the same or any other covenant.

## SEVERABILITY:

a) Except for the provisions in the Arbitration Agreement paragraph above, Arbitration Agreement, and CARE Guidebook, which shall be governed by their terms, if any provision or portion of any provision of this Agreement is, for any reason, adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body, or a court of competent jurisdiction, the remainder of the Agreement will remain in full force and effect.

b) Except for the provisions in the Arbitration Agreement paragraph above, Arbitration Agreement, and CARE Guidebook, which shall be governed by their terms, if any of the covenants, including but not limited to restrictive covenants, contained in this Agreement or any part thereof are held to be unreasonable and/or unenforceable, the parties agree that the court or arbitrator(s) making such determination shall have the power to revise such provision(s), so as to render such provision(s) reasonable and enforceable, to the maximum extent permitted by law, upon which such provision(s) shall then be enforceable.

## ATTORNEYS' FEES:

In the event of a breach of any of the terms of the paragraphs relating to Confidentiality Obligations, Non-Solicitation of Clients, Right to Injunction, and Damages in this Agreement by you, you agree to pay all fees and costs, including reasonable attorneys' fees, incurred by Morgan Stanley in connection with the enforcement of this Agreement.

**ACTIVE ADVISOR REPRESENTATION:**

You represent as follows:

**I HAVE READ AND REVIEWED THIS AGREEMENT AND THE ARBITRATION AGREEMENT[5] AND CARE GUIDEBOOK[6] IN THEIR ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MORGAN STANLEY QUESTIONS ABOUT THEM. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND THE ARBITRATION AGREEMENT AND CARE GUIDEBOOK, INCLUDING THE CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION WAIVERS INCLUDING THEREIN, AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM. MY SIGNATURE BELOW INDICATES MY AGREEMENT TO ALL PROVISIONS HEREIN AND THE ARBITRATION AGREEMENT AND CARE GUIDEBOOK.**

Signed in the State of <u>     FL                 </u>

**ACTIVE ADVISOR**

_____     _____
Date                                Hakyung Campione (Print Active Advisor Name)

> **APPROVED**
> *By Kay Campione at 1:18 pm, Mar 24, 2023*

_____
Hakyung Campione (Signature of Active Advisor)

**REVIEWED AND APPROVED ON BEHALF OF MORGAN STANLEY SMITH BARNEY LLC**

> **APPROVED**
> *By vincent.celano at 1:26 pm, Mar 23, 2023*

_____     By: _____
Date                                Vincent Celano, Branch Manager

---

[5] Located at: http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Stored to Generate a URL/Wealth Management/Arbitration Agreement.pdf

[6] Located at: http://home.ms.com/pub/content/dam/meatms/pdf/NA-and-Global/Linked-to-Content-on-Me-at-MS/USA/c/CARE%20Guidebook.pdf